UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MICHELE L. BROWN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. 1:11-cv-01000-MJD-JMS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

**Entry on Judicial Review**

Plaintiff Michele Brown requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §423. The Court rules as follows.[1]

**I.** Procedural History

Brown applied for DIB on April 7, 2008, alleging a disability onset date of January 18, 2007. She was insured for purposes of DIB through December 31, 2012. Brown's application was denied initially and upon reconsideration. Thereafter Brown requested a hearing, which was held before Administrative Law Judge ("ALJ") Ann Rybolt on April 28, 2010. The ALJ denied her application on September 3, 2010, and the Appeals Council denied review on June 28, 2011, making the ALJ's decision the agency's final decision for purposes of judicial review. Brown filed her Complaint with this Court on July 27, 2011.

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

## I. Factual Background and Medical History

Brown was 40 years old at the time of her alleged disability onset date and was 44 years old at the time of the ALJ's decision. Brown has a high school education and previously worked as a bakery worker and a forklift driver. She was involved in an automobile accident in January 2007 in which she sustained fractures in her pelvis and lower back and a displaced fracture in her left hip. Two weeks after the accident, Dr. Brian Mullis, an orthopedic surgeon, performed successful surgery on Brown's left hip fracture using screws and a pelvic plate. Brown underwent a second surgery with screw placement to stabilize her pelvis on February 2, 2007. Brown was released from the hospital on February 5, 2007 to a physical rehabilitation center, and was discharged from the rehabilitation center ten days later. She then attended physical therapy from March 2007 to August 2007, and underwent speech and language therapy until June 29, 2007. Brown was able to return to bowling weekly by August 2007 and continued until December 2009.

Upon discharge from physical therapy, Brown had progressed from non-weight-bearing in her left leg to using a cane independently for walking. She was referred for additional physical therapy in August 2008 for help with range of motion and strengthening of her left leg, and was discharged from physical therapy in December 2008, having met all goals and reporting pain levels of one on a scale of one to ten. Brown was treated by Dr. Palmer Mackie for management of her hip and back pain from December 2007 through January 2010. In January 2009, Brown saw Dr. Mullis for a routine follow up examination of her hip and reported that her pain averaged three to five on a ten point scale with activity, and reported that she typically walked with a cane. Dr. Mullis observed that Brown had some reduced range of motion, but had normal motor function, sensation, and reflexes.

Subsequent to the date of her application, Brown was diagnosed with breast cancer in November 2009. Dr. Erika Rager reported that a mammogram and ultrasound revealed one large mass and one smaller mass in her right breast and enlarged lymph nodes, which had been present for about four to six weeks. A biopsy confirmed that Brown had invasive ductal carcinoma. Oncologist Dr. Kathy Miller diagnosed Brown with locally advanced right breast cancer. Both Dr. Rager and Dr. Miller recommended chemotherapy, followed by surgery and radiation or more chemotherapy, depending on the results of the surgery. Brown received daily oral chemotherapy and weekly intravenous chemotherapy from December 2009 until June 2010. The chemotherapy caused Brown to have fatigue, nausea and vomiting, and decreased immunity, and she was unable to continue bowling.

## I. Applicable Standard[2]

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 416.905. In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 1382(a)(3)(B).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions. For the sake of simplicity, this Entry cites primarily to the SSI sections.

not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities) that meets the duration requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in

his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning ... [and] build an accurate and logical bridge from the evidence to his conclusion." *Id.*

## II. The ALJ's Decision

The ALJ first found that Brown met the insured status requirements for purposes of DIB through December 31, 2012. Applying the five step analysis, the ALJ found at step one that Brown had not engaged in substantial gainful activity since January 18, 2007, the alleged onset date. At step two, the ALJ found that Brown has the following severe impairments: residuals of fractures of the left inferior pubic ramus, iliac, acetabulum, and transverse processes at L4-5 and S1 through S3, and mild degenerative changes of the lumbar spine. The ALJ further concluded that Brown's breast cancer was not a severe impairment, reasoning that it was non-severe because it did not meet the twelve month durational requirement. At step three, the ALJ determined that Brown does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Brown had the residual functional capacity ("RFC") to lift, carry, push and pull ten pounds occasionally and less than ten pounds frequently. The ALJ further determined that Brown could stand and/or walk for a total of two hours and sit for a total of six hours during an eight-hour work day, with the option to stand for five minutes each hour at her work station; occasionally climb stairs and ramps, balance and stoop. The ALJ concluded that Brown could not climb ladders, ropes or scaffolding; nor could she crouch, kneel or crawl or perform push or pull maneuvers with her left lower extremity. Brown also could not work at unprotected heights and could have no concentrated exposure to wetness, humidity, temperature extremes or vibrations.

At step four, the ALJ determined that Brown is unable to perform her past relevant work as a bakery worker and forklift driver because she is limited to a range of sedentary work. At step five, the ALJ determined that there are jobs that exist in significant numbers in the regional economy that Brown could perform considering her age, education, work experience, and residual functional capacity. The ALJ concluded that Brown had not been under a disability from January 18, 2007 through the date of the decision.

## V. Discussion

Brown presents four arguments as to why the ALJ committed reversible error and the case should be remanded. Specifically, Brown claims that (1) the ALJ erred at step two in determining that her locally advanced breast cancer was not a severe impairment because it did not meet the twelve month durational requirement; (2) the ALJ erroneously ignored or rejected the residual functional capacity assessment by Brown's treating physicians; (3) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7p; and (4) substantial evidence fails to support the step five determination that Brown was not disabled because she could perform some jobs. Although Brown's original application was based upon her impairments relating to her pelvic, hip and back impairments, the primary issues relate to Brown's impairments arising from her breast cancer, and the Court finds that the ALJ committed reversible error for the reasons stated below.

### A. The ALJ's Step Two Determination

Brown argues that the ALJ erred at step two because her finding was contrary to SSA regulations for determining what constitutes a "severe impairment." Brown alleges that the ALJ erroneously confused the step two "severe" impairment requirement with the twelve month duration requirement in the definition of total disability, and the duration requirement should

have been considered at step three, four or five. 20 C.F.R. § 404.1520(a)(4)(ii) states "[a]t the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment *that meets the duration requirements in § 404.1509*, or a combination of impairments that is severe *and meets the duration requirement*, we will find that you are not disabled." (emphasis added). 20 C.F.R. § 404.1521 defines a non-severe impairment as one that "does not significantly limit your physical or mental ability to do basic work activities." The duration requirement is a separate consideration found under § 404.1509 which requires that the impairment last at least twelve month in order to be considered disabling. Brown is correct that the determination as to whether an impairment is severe—i.e. that it limits the ability to do basic work activities— is a separate determination from whether the impairment meets the durational requirement. An impairment could conceivably be considered severe but not meet the duration requirement, in which case the analysis would not proceed to step three. However, both of these determinations—severity and duration—are properly made at step two. Thus, while the ALJ did not err in considering the duration requirement at step two, she did err in concluding that Brown's breast cancer was non-severe merely based upon her conclusion that it did not meet the duration requirement.

The ALJ failed to properly assess both the severity and the duration of Brown's impairment, and her assessment that Brown's breast cancer did not satisfy either requirement was not supported by substantial evidence. The ALJ provides a very cursory discussion of Brown's breast cancer, even though there is medical evidence in the record that addresses this condition and its treatment. [Tr. 40-41, 48, 350-56.] The ALJ focused only on the fact that Brown was to receive weekly chemotherapy from December 2010 until June 2010, and used this time frame to determine that she did not meet the duration requirement. However, the ALJ

7

failed to take into account several factors that must be considered in determining the severity and duration of Brown's breast cancer.

    1.   Severity determination

First, the ALJ failed to properly consider all of the factors in determining whether Brown's breast cancer constituted a "severe" impairment. An impairment or combination of impairments is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521. An impairment is not severe when medical or other evidence establishes that the impairment has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1520(c). Malignant neoplastic disease (i.e. cancer) is evaluated under § 13.00 of the listing of impairments. When evaluating cancer, the ALJ must take into account the "[d]uration, frequency, and response to antineoplastic therapy" which includes (but is not limited to) surgery, irradiation and chemotherapy. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.00B. The ALJ is required to analyze the effects of the cancer treatment, not just the disease itself, in determining the severity of the impairment, and the effects of therapy may be considered disabling on their own. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.00G. The ALJ made no mention of the effects of Brown's chemotherapy or other treatments on her ability to work and whether these effects could be considered severe or non-severe, and ignored evidence from Brown's treating physician that Brown was unable to work due to fatigue and decreased immune function. [Tr. 334.] The ALJ committed reversible error in analyzing the severity of Brown's impairments related to breast cancer, and upon remand should consider the effects of Brown's cancer treatments in determining whether this condition constituted a severe impairment.

2. Duration determination

Second, the ALJ erred in only considering the time frame in which Brown was to receive her first round of chemotherapy as a measure of the duration of her impairment. Section 13.00E(3) states that "[w]henever the initial planned therapy is multimodal, a determination about the effectiveness of the therapy usually cannot be made until the effects of all the planned modalities can be determined. In some cases, we may need to defer adjudication until the effectiveness of therapy can be assessed." *See Duncan v. Astrue*, 2008 WL 4083170 *3 (W.D. Wash. Aug. 28, 2008) (ALJ must take into account the entire course of therapy in determining duration of the impairment). The evidence shows—and the ALJ recognized—that Brown's planned therapy was multimodal, with surgery and additional chemotherapy or radiation planned for after the initial chemotherapy. [Tr. 14, 334, 352, 354.] Not only did the ALJ fail to consider the length of these additional treatments, she also did not consider to what extent and how long these treatments would affect Brown's ability to work.

Finally, the ALJ also failed to consider whether Brown's breast cancer existed prior to the date of diagnosis in determining the duration of her impairment. Under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.00J, there may be a finding that a disabling impairment existed prior to the date of diagnosis based upon the type of malignancy and its location, as well as the claimant's symptoms. *See Duncan*, 2008 WL 4083170 *3. The medical records indicate that the lump in Brown's breast had been present for four to six weeks prior to the diagnosis. [Tr. 345.] Thus, the ALJ committed reversible error in failing to properly consider whether Brown's breast cancer and treatment met the twelve month duration requirement. On remand, the ALJ must consider both the duration of Brown's entire cancer treatment as well as how long her cancer existed prior to diagnosis when determining the duration of Brown's impairment related to breast

9

cancer.

A. The ALJ's Step Three Determination

By erroneously concluding that Brown's breast cancer was a non-severe impairment, the ALJ did not continue to step three and consider whether Brown's impairment met or medically equaled Listing 13.10 (Malignant Neoplastic Diseases: Breast). To meet Listing 13.10, a claimant must have:

> A. Locally advanced carcinoma (inflammatory carcinoma, tumor of any size with direct extension to the chest wall or skin, tumor of any size with metastases to the ipsilateral internal mammary nodes).
>
> OR
>
> B. Carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases.
>
> OR
>
> C. Recurrent carcinoma, except local recurrence that remits with antineoplastic therapy.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.10. Medical records from treating oncologist Dr. Miller diagnose Brown with locally advanced breast cancer, which appears to satisfy the requirements of Listing 13.10A. [Tr. 354-56.] The ALJ did not discuss this evidence, nor did she summon a medical expert to confirm whether Brown's impairment met the requirements of Listing 13.10. On remand, the ALJ must make the determination as to whether Brown's breast cancer meets or medically equals a listed impairment and apply the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1 § 13.00.

B. The ALJ's Rejection of the Treating Physicians' RFC Analyses

Brown next argues that the ALJ erred in ignoring or rejecting the residual functional capacity assessments of treating oncologist Dr. Miller and treating pain physician Dr. Mackie. Dr. Miller opined that Brown was unable to work due to the side effects of chemotherapy. [Tr.

334.] Dr. Mackie opined that Brown was able to lift twenty pounds occasionally and ten pounds frequently; could carry ten pounds frequently, stand and walk one hour during an eight hour work day, and sit three to five hours. [Tr. 336-37.]

The ALJ gave proper weight to the opinion of Dr. Mackie, but did not properly consider the opinion of Dr. Miller. Generally, a treating physician's opinion regarding the nature and severity of a claimant's medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). Medical evidence may only be discounted if it is internally inconsistent or inconsistent with other evidence. 20 C.F.R. § 404.1527(c); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The ALJ cited to other evidence in the record that was inconsistent with Dr. Mackie's assessment, including records from her treating orthopedic surgeon, Dr. Brian Mullis, who placed no restrictions on Brown's activities with the exception of participating in activities that required prolonged standing, walking, or heavy lifting, and physical therapy records stating that Brown had met all goals and that her pain was at one on a ten point scale. [Tr. 18-19.] Thus, the ALJ did give proper weight to Dr. Mackie's opinion in making her RFC assessment.

However, because the ALJ failed to find that Brown's breast cancer was a severe impairment, she disregarded Dr. Miller's opinion that Brown was unable to work due to the side effects of chemotherapy. When making an RFC determination, the ALJ is required to consider *all* medically determinable impairments, even those that are not considered "severe." *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). The ALJ's failure to consider Dr. Miller's opinion regarding Brown's breast cancer—regardless of whether the ALJ found it to be a severe impairment—constituted reversible error. On remand, the ALJ should consider Dr. Miller's

opinion in making the determination as to the effects of Brown's cancer treatments on her ability to work and her overall residual functional capacity.

C. The ALJ's Credibility Finding

Brown next asserts that the ALJ erred by making a credibility determination that was contrary to Social Security Ruling 96-7p. A reviewing court may reverse an ALJ's credibility determination only if it is so lacking in explanation or support that it is "patently wrong." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009); *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). It is essential that the ALJ articulate specific reasons for crediting or rejecting particular sources of evidence, even when there are strong grounds upon which the ALJ may have rejected the claimant's evidence. *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984). The district court must defer to the ALJ's credibility determination; however, the Court must first be certain that a credibility determination has actually been made. *Schroeter v. Sullivan*, 977 F.2d 391, 395 (7th Cir. 1992).

The Court finds that the ALJ's credibility determination as it relates to Brown's hip and pelvic related impairments is not patently erroneous. The ALJ cites to adequate records that are inconsistent with Brown's claims regarding her levels of pain, including records from her orthopedic surgeon Dr. Mullis, physical therapy records, and her weekly bowling prior to the start of her chemotherapy treatments. [Tr. 18-19.] However, the ALJ will need to complete another credibility determination on remand which takes into account Brown's subjective complaints regarding the effects of her cancer and cancer treatment therapies.

D. The ALJ's Step Five Determination

Brown argues that the ALJ erred in her step five determination and substantial evidence does not support the ALJ's conclusion that she could perform some jobs. Specifically, Brown

12

alleges that the ALJ erred by failing to include her pain, fatigue, nausea and vomiting from chemotherapy in the hypothetical. "Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). An exception exists in cases where the vocational expert independently learns of the claimants limitations and presumably accounted for them. *Id.*

The ALJ in this case did fail to account for all of Brown's limitations that were supported by the medical records. As discussed above, the ALJ erroneously concluded that Brown's breast cancer was a non-severe impairment; thus she did not include the limitations associated with this impairment in her hypothetical posed to the vocational expert. Additionally, there is no indication that the vocational expert independently accounted for Brown's limitations associated with her breast cancer. Therefore, this Court finds that the ALJ erred in her step five determination that Brown could perform some work due to the ALJ's failure to account for all of Brown's limitations.

## VI. Conclusion

For the reasons stated above, the Court hereby REVERSES the ALJ's decision and REMANDS this case for further proceedings consistent with this opinion.


So ordered.

06/22/2012

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

13